UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MERCURY SYSTEMS, INC. )<br><br>  Plaintiff, )<br><br> )<br>v. )<br> )<br>SHAREHOLDER REPRESENTATIVE )<br>SERVICES LLC, and )<br>KEVIN CARNINO; )<br>THOMAS P. O'HARA; )<br>NEW ENTERPRISE ASSOCIATES 11, LIMITED )<br>PARTNERSHIP; NEW ENTERPRISE )<br>ASSOCIATES 10, LIMITED PARTNERSHIP; )<br>NEW ENTERPRISE ASSOCIATES 9, LIMITED )<br>PARTNERSHIP; NEA VENTURES 2006, )<br>LIMITED PARTNERSHIP, )<br> )<br>  Defendants, individually and on )<br>    behalf of a Defendant Class. )<br> ) | Civil Action No. 1:13-cv-11962-RGS |

**MEMORANDUM OF LAW IN SUPPORT OF
MERCURY'S MOTION FOR CERTIFICATION OF DEFENDANT CLASS**

Plaintiff Mercury Systems, Inc. (formerly known as Mercury Computer Systems, Inc. ("Mercury")) submits the following memorandum of law in support of its motion for class certification.

**I.     INTRODUCTION**

This case concerns Mercury's indemnification rights under a December 2011 merger agreement by which KOR Electronics merged into, and became a wholly-owned subsidiary of, Mercury. Under the agreement, Mercury paid $70 million to redeem KOR's outstanding options and shares, then held by over 200 shareholders and option holders ("Securityholders"). A portion of that payment was escrowed to indemnify Mercury for KOR's pre-merger tax

liabilities, and for any breaches of the merger agreement. Mercury subsequently filed indemnification claims totaling more than $2 million, relating to KOR's federal and state tax liability for 2011 and prior years. The former Securityholders, acting through Defendant Shareholder Representative Services LLC ("SRS"), denied those claims.

By this action, Mercury seeks to enforce its indemnification rights and recover damages arising from the former Securityholders' breach of the merger agreement. If Mercury prevails, each former Securityholder will be liable on a pro rata basis for Mercury's claims. Mercury's Amended Complaint names SRS, as well as six former Securityholders that were principal owners of KOR preferred stock, common stock, and vested options. These six former Securityholders (the "Class Representatives") are named individually and as representatives of a proposed defendant class consisting of the more than 200 Securityholders at the time of the merger (the "Defendant Class"). Mercury now seeks certification of this Defendant Class.

Mercury's request for class certification is appropriate under Fed. R. Civ. P. 23. First, this case meets the requirements of Rule 23(a). The members of the putative Defendant Class are numerous and geographically dispersed, such that it would be impractical to file suit against each member individually. In addition, issues of law and fact are common to all members of the Defendant Class, and center on whether the former Securityholders and their agent, SRS, breached the merger agreement by denying Mercury's claims for indemnification for KOR's pre-merger federal and state tax liabilities. Further, the defenses of the Class Representatives are typical of the defenses of the Defendant Class; all former Securityholders have asserted, through SRS, the identical defense that Mercury did not incur a "loss" triggering a right of indemnification under the merger agreement. Finally, the Class Representatives will fairly and adequately represent the interests of the putative Defendant Class. The Class Representatives are among the largest former Securityholders, and they have a strong incentive to defend this action.

Additionally, the Class Representatives and SRS are represented jointly by an international law firm with significant experience in complex commercial litigation like this.  To fund this defense, the Class Representatives and SRS have at their disposal a separate escrow account that was established under the merger agreement to cover expenses incurred by SRS to represent the former Securityholders.

This case also meets the requirements of Rule 23(b).  Certification of a mandatory defendant class under Rule 23(b)(1) is appropriate, since requiring Mercury to bring separate actions against the individual former Securityholders could create a risk of inconsistent adjudications with respect to individual class members, thereby subjecting Mercury to incompatible standards of conduct.  Bringing separate actions also could impede the interests of former Securityholders that are not parties to those adjudications.  Certification of a mandatory defendant class also is appropriate under Rule 23(b)(3), as the common issue of whether Mercury is contractually entitled to indemnification predominates over any other issue or question pertaining to individual former Securityholders.

## II.    FACTUAL BACKGROUND

### A.    The Merger

On December 22, 2011, Mercury and its wholly-owned subsidiary, King Merger, Inc. ("KMI"), entered into an "Agreement and Plan of Merger" (the "Merger Agreement") with KOR Electronics.  Defendant SRS was a party to the Merger Agreement as the representative for the more than 200 holders of the outstanding KOR shares and vested options at the time of the merger.  See Doc. #26 (Mercury's Amended Complaint) ¶¶ 10, 18.  Under the Merger Agreement, KMI merged into KOR, and KOR continued as the surviving company, as a wholly-owned subsidiary of Mercury.  Id. at 18.  KOR warranted that KOR and its subsidiaries "have timely filed, or have caused to be timely filed on their behalf," all tax returns required to be filed

3

by them; that all such tax returns are "true, correct and complete in all material respects"; and that all "Taxes" (defined to include federal or state taxes) owed by KOR and its subsidiaries "have been timely paid in full." Id. at ¶ 20.

### B. Mercury's Rights to Indemnification

At the closing of the merger on December 30, 2011, Mercury paid consideration totaling approximately $70 million to the KOR Securityholders in exchange for their shares and the termination of their options. Id. at ¶ 19. Of this $70 million, $10.65 million (the "Indemnity Escrow Amount") was escrowed to indemnify Mercury for "Taxes," as defined, and other matters enumerated in the Merger Agreement as follows:

> Actions, Liabilities, Government Orders, Encumbrances, losses, damages, bonds, dues, assessments, fines, penalties, Taxes, fees, costs (including costs of investigation, defense and enforcement of this Agreement), expenses or amounts paid in settlement (in each case, including reasonable attorneys' and experts' fees and expenses, but excluding internal personnel costs related thereto), whether or not involving a Third Party Claim (collectively "Losses").

Merger Agreement § 9.01 (emphasis in original).[1] An additional $150,000 of the merger consideration (the "SR Escrow Amount") was escrowed to pay the costs and expenses incurred by SRS to represent the former Securityholders, including the cost of defending actions arising from the Merger Agreement. See Declaration of Christopher Carter ("Carter Decl."), ¶ 3, Exh. 1

---

[1] Notwithstanding use of the term "Losses," Mercury's right to indemnification is not predicated on Mercury incurring an out-of-pocket expense or costs. In particular, Mercury is entitled to indemnification for KOR Tax liabilities that arose prior to closing, without regard to whether Mercury, after the closing, had to make additional payments to satisfy KOR's pre-merger Tax liabilities. This is because Mercury's right to Tax indemnification is calculated using a pro forma calculation that does not account for deductions previously claimed by KOR for transactional costs associated with the merger, and payments made at closing to KOR option holders. The pro forma calculation also does not account for estimated Tax pre-payments that reduced the cash Tax payments actually due and payable after the merger. This indemnification formulation and procedure was negotiated between the parties as part of the overall purchase price for the merger. It provides Mercury with the financial benefit of merger-related expenses that KOR claimed as deductions against its actual tax liability for pre-closing periods, and of estimated Tax pre-payments that were listed on KOR's balance sheet and were among the KOR corporate assets that Mercury acquired through the merger. Amended Complaint ¶¶ 28-32.

(Merger Agreement), § 3.03(b); (Escrow Agreement), § 5(a).  The former Securityholders' interests in the escrowed funds are apportioned as follows:

- 19.05% to holders of the 5,811,006 outstanding shares of KOR preferred stock (five holders);
- 52.36% to holders of the 4,321,268 outstanding shares of KOR common stock (approximately 70 holders); and
- 28.59% to holders of the 2,359,954 KOR vested options (approximately 130 holders).

Amended Complaint ¶ 26.

The Securityholders must indemnify Mercury for Taxes relating to pre-closing Tax periods, as well as Losses arising from any failure of KOR and its subsidiaries to file required Tax returns or pay Taxes owed.  Id. at ¶ 28.  They must also indemnify Mercury for investigation costs, settlement payments, and attorneys' fees and costs, relating to any misrepresentations by KOR and any breach of the Agreement.  Id.  The former Securityholders' liability is not capped by the Indemnity Escrow Amount.  In the event these funds are insufficient to cover Mercury's claims, each former Securityholder is liable for those claims on a pro rata basis, according to its percentage interest of the consideration paid for the merger.  Id.

### C. Indemnity Procedures

At closing, Mercury and SRS entered into an escrow agreement that sets forth procedures for the submission and payment of claims for indemnification.  Id. at ¶ 25.  Under the escrow agreement, Mercury had approximately two years from the merger – from December 22, 2011, to December 27, 2013 – to submit claim certificates seeking indemnification to SRS and the escrow agent, Wells Fargo Bank.  Id.  SRS had 30 days to object to any claim.  Id.  If SRS disputed a claim, the escrow agent could not release funds from the Escrow Indemnity Amount to pay the claim until the dispute has been resolved.  Id.  On December 30, 2013, the escrow agent was authorized to release the balance of the Escrow Indemnity Amount, less the amount of

5

all outstanding claims, to the Securityholders on a pro rata basis in accordance with their interest in those funds. Id. at ¶ 27.

### D. Mercury's Indemnification Claims

Between August 2012 and June 2013, Mercury submitted three indemnification claims to SRS totaling over $2 million. Id. at ¶¶ 33-42. Of this amount, $1,829,112 relates to KOR's 2011 federal and state tax liability. Id. at ¶¶ 33-39. Mercury calculated these claims in accordance with the pro forma calculation dictated by the Merger Agreement. Id. at ¶ 30.[2] SRS objected to the payment of these claims. Id. at ¶¶ 34, 38, 41. SRS argues Mercury incurred no indemnifiable "Loss," as defined, since no further Tax payments were required after the merger with respect to KOR's 2011 federal and state taxes. Doc. #28 (Defendants' First Amended Answer), at ¶¶ 1-2, 11-12. SRS also argues that the Securityholders' indemnity obligation should be offset by the amount of any tax refunds received by KOR. Amended Complaint, ¶¶ 38-39.

The balance of Mercury's indemnification claims, totaling $225,016, relates to KOR's failure to file state tax returns and pay the related state taxes owed for 2011 and prior years in five states: Florida, Illinois, Maryland, Massachusetts, and New York. Id. at ¶ 40. In each of these states, KOR had a nexus for purposes of determining state tax liability, and Mercury was forced to prepare tax filings in these states. Id. SRS objected to these indemnification claims as well. Id. at ¶ 41.

Although the Merger Agreement designates SRS as the former Securityholders' agent for all purposes of the Merger Agreement, and grants SRS the authority to object to any indemnification claim, the evidence demonstrates the former Securityholders, including two of

---

[2] Specifically, the claims are calculated based on the gross amount of KOR's Tax liability, before applying deductions for merger-related expenses. Amended Complaint, ¶ 30. In addition, Mercury's claims are not reduced to account for estimated Tax pre-payments made by KOR before the merger, or by Tax refunds received by KOR after the merger. Id. at ¶ 32.

the Class Representatives named in Mercury's Amended Complaint (Kevin Carnino and Thomas O'Hara), as well as a "shareholders' committee," were directly involved in the review of Mercury's claims, and dictated how SRS responded to the claims.

For example, on September 26, 2012, SRS responded to Mercury's first claim certificate, which sought indemnification relating to KOR's 2011 Tax liability. In an email to Mercury's corporate counsel, with copies to former Securityholders Kevin Carnino and Thomas O'Hara, the SRS Director, William Denebeim, stated he had "polled the shareholder's [sic] committee" with regard to Mercury's Tax claim, and had been authorized to propose a compromise payment. See Carter Decl., ¶ 4, Exh. 2. Denebeim advised "[t]he management team and advisors involved with the transaction remain firm in asserting their position" on Mercury's Tax claim. Id. On September 28, 2012, after further discussions between SRS and Mercury over the Mercury's Tax claim, the SRS Executive Director, Christopher Letang, emailed Mercury's corporate counsel and advised: "I have relayed the results of our conversations to the shareholders, who are considering how they would like to proceed." Id., ¶ 5, Exh. 3. Later that day, William Denebeim updated Mercury's corporate counsel as follows: "We have not yet heard back from Tom [O'Hara] and Kevin [Carnino]. I just sent them an email and left messages at their numbers." Id.

    E.  **Mercury's Legal Claims**

By the instant action, Mercury seeks a declaratory judgment that it is entitled to payment of its indemnification claims. Mercury also seeks damages arising from Defendants' breach of the Merger Agreement, including recovery of fees and costs incurred to enforce Defendants' obligations under the Agreement. Mercury's Amended Complaint names SRS, and six Class Representatives that were among the principal holders of KOR preferred stock, common stock, and vested options at the time of the merger, as follows:

- NEA 10: 3,060,866 shares, or 53%, of KOR preferred stock;
- NEA 11: 1,470,355 shares, or 25%, of KOR preferred stock;
- NEA 9: 1,196,465 shares, or 21%, of KOR preferred stock;
- NEA Ventures 2006: 4,036 shares, or 1%, of KOR preferred stock; and
- Kevin Carnino: 1,127,200 shares, or 26%, of KOR common stock.

Amended Complaint ¶¶ 3-8. In addition, Carnino and Thomas O'Hara each held 247,500 (10%) and 180,000 (8%), respectively, of the outstanding vested options in KOR. Id. These Defendants reside in California. Id. The remaining Securityholders reside in California, as well as Colorado, Arizona, New York, Georgia, and Texas. See Carter Decl., ¶ 6, Exh. 4.

## II. ARGUMENT

### A. Legal Standard

The District Court may certify a class action if the putative class meets the requirements of Rule 23. Sparkle Hill, Inc. v. Interstate Mat Corp., No. 11-10271-RWZ, 2012 U.S. Dist. LEXIS 178793, at *2-*3 (D. Mass. Dec. 18, 2012). First, the party seeking class certification must satisfy the following criteria in Rule 23(a): (1) the class is so numerous as to make joinder impracticable; (2) there are common questions of law or fact; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. See In re Nexium Esomeprazole Antitrust Litig., No. 12-md-02409-WGY, 2013 U.S. Dist. LEXIS 173353, at *15 (D. Mass. Dec. 11, 2013); Sparkle Hill, 2012 U.S. Dist. LEXIS at *3; In re Dehon, Inc., 298 B.R. 206, 212 (Bankr. D. Mass. 2003).

Second, the party seeking class certification must satisfy one of the requirements in Rule 23(b). Sparkle Hill, 2012 U.S. Dist. LEXIS at *3; Dehon, 298 B.R. at 214. Under Rule 23(b)(1), a class may be certified if "prosecuting separate actions against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class;

or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." McLaughlin v. Harbor Cruises LLC, No. 06-11299-GAO, 2009 U.S. Dist. LEXIS 27278, at *5 (D. Mass. Mar. 31, 2009); In re New England Mut. Life Ins. Co. Sales Practices Litig., 183 F.R.D. 33, 42 (D. Mass. 1998); Ragsdale v. Turnock, 625 F. Supp. 1212, 1219 (N.D. Ill. 1985), vacated in part on other grounds, Ragsdale v. Turnock, 841 F.2d 1358, 1360 (7th Cir. 1988).  Under Rule 23(b)(3), a class may be certified if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Nexium, 2013 U.S. Dist. LEXIS at *26-*27; Sparkle Hill, 2012 U.S. Dist. LEXIS at *6-*7.

When certifying a class, the question is not whether the movant has "stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." Hochstadt v. Boston Sci. Corp., 708 F. Supp. 2d 95, 102 (D. Mass. 2010) (quoting Waste Mgt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st Cir. 2000)); Lynch Corp. v. MII Liquidating Co., 82 F.R.D. 478, 481 (D.S.D. 1979) (under Rule 23(a), a court "is to inquire only whether the requirements of Rule 23 have been met, not whether the plaintiff will probably prevail on the merits").  Further, for purposes of a motion for class certification, the allegations in the complaint are presumed to be true.  See Natchitoches Parish Hosp. Serv. Dist. v. Tyco Int'l, Ltd., 247 F.R.D. 253, 256 (D. Mass. 2008); Redd v. Arrow Fin. Servs., LLC, No. 03 C 1341, 2004 U.S. Dist. LEXIS 5421, at *5 (N.D. Ill. 2004) ("Federal district courts do not reach the merits of the complaint or weigh evidence").

Rule 23 "unquestionably authorizes the certification of defendant classes." Ragsdale, 625 F. Supp. at 1222; Lynch, 82 F.R.D. at 480 (Rule 23 "mak[es] no distinction between plaintiff

9

and defendant classes"). Rule 23(a) states, in part that "[o]ne or more members of a class may sue <u>or be sued</u> as representative parties on behalf of all only if . . . (3) the claims <u>or defenses</u> of the representative parties are typical of the claims <u>or defenses</u> of the class." Fed. R. Civ. P. 23(a) (emphases added). In addition, Rule 23(b) states a class action may be maintained if the requisites of Section 23(a) are met, and if prosecuting separate actions "by <u>or against</u> individual class members" would create certain risks. Fed. R. Civ. P. 23(b)(1).

      **B.**    **<u>This Case Meets the Requirements of Rule 23(a)</u>**

            **1.**    **<u>Numerosity (Rule 23(a)(1))</u>**

A class that exceeds 40 parties generally is "deemed sufficient" to satisfy Rule 23(a)(1). <u>Nexium</u>, 2013 U.S. Dist. LEXIS at *15. When evaluating the numerosity requirement, "[w]hile the actual number of putative class members is a consideration, the impracticality of joinder of those members, owing to geographic dispersal, is of greater import." <u>Dehon</u>, 298 B.R. at 214; <u>Nexium</u>, 2013 U.S. Dist. LEXIS at *19 ("Subjective factors such as the geographic location of proposed class members . . . must be taken into account."). In <u>Lynch</u>, for example, the putative class consisted of 290 shareholders residing in 16 different states. 82 F.R.D. at 481. The District Court held numerosity was satisfied. <u>Id.</u>; <u>see also</u> <u>Dehon</u>, 298 B.R. at 214 (numerosity satisfied where putative class of over 1,000 Dehon shareholders lived throughout the United States and in other countries, rendering joinder "not only impracticable, but impossible").

Here, the putative Defendant Class has approximately 200 members spread across six different states. Doc. #26 ¶¶ 3-8, 10. Thus, it is so numerous that it would be impracticable to join its members individually in one action. <u>See</u> <u>Dehon</u>, <u>supra</u>; <u>Lynch</u>, <u>supra</u>; <u>Dudley v. Se. Factor & Fin. Corp.</u>, 57 F.R.D. 177, 180 (N.D. Ga. 1972) (certifying defendant class of 500 shareholders); <u>Dale Elecs., Inc. v. R. C. L. Elecs., Inc.</u>, 53 F.R.D. 531, 534-36 (1st Cir. 1971) (affirming certification of defendant class of 13 electronics corporations in patent infringement

10

suit); Ragsdale, 625 F. Supp. at 1224 (certifying defendant class of 102 state's attorneys dispersed throughout Illinois).

### 2. Commonality (Rule 23(a)(2))

The "commonality" requirement is satisfied "if there are issues of law or fact common to the members of the class." Dehon, 298 B.R. at 214. Rule 23(a)(2) does not require "that all class members have in common all questions of fact and law." Id. (emphasis in original). Commonality can still exist "despite some factual differences between the members of the class." Id. In addition, "[t]he fact that the sellers (defendants) rather than the purchasers (plaintiffs) are sought to be certified in the present case is not significant to a 23(a)(2) determination." Lynch, 82 F.R.D. at 481.

In Dehon, the Court held commonality was established with respect to a defendant class of shareholders. Id. at 215. All class members had interests in the stock of Dehon, a bankrupt entity. Id. at 215. The plaintiff (a bankruptcy plan administrator) wanted to subordinate the class members' interests to the claims of general unsecured creditors. Id. The Court inferred that certain defenses of some of the shareholders of the putative class to this subordination strategy would be available to every other shareholder. Id. Similarly, in Lynch, an action brought against a company, its board of directors, officers, and shareholders, the District Court held commonality was satisfied because "[l]iability, if any, on the part of the proposed class [of shareholders] will be based upon their status as shareholders. Each shareholder will have factual and legal theories in common with the other shareholders." 82 F.R.D. at 481.

Here, Mercury's claims and the Securityholders' defenses concern the same issue: Mercury's right to Tax indemnification under the Merger Agreement. Mercury contends it has properly calculated its claims using the pro forma calculation required by the agreement. Mercury also contends it is entitled to indemnification for amounts paid as a result of the failure

11

of KOR to prepare and file Tax returns in several states, or make the required Tax payments owed. The former Securityholders, through SRS, objected to Mercury's claims by arguing that Mercury did not incur a "Loss" with respect to KOR's 2011 Tax liability, and that KOR filed all required state Tax returns prior to the merger. Since Mercury filed suit, SRS and the Class Representatives have continued to advance these same arguments. Thus, there are questions of law common to the putative Defendant Class. See Dehon, supra; Lynch, supra; Dudley, 57 F.R.D. at 180 (common questions of law or fact pertained to putative class of common shareholders, who allegedly were unjustly enriched with preferred stock, and representative shareholder); Ragsdale, 625 F. Supp. at 1224 (questions of law were common to putative defendant class, where class members all opposed plaintiffs' challenge to the validity of statutory and regulatory scheme).

### 3. Typicality (Rule 23(a)(3))

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Dehon, 298 B.R. at 215. "Unlike the first two requirements under 23(a), typicality is a condition of the representative, not the class." Id. "Satisfaction of typicality does not require factual and legal replication of all class members' claims in the putative representative's claim, but, rather, it may be achieved if the claims arise from the same practice, event, or course of conduct and are based on the same legal theory." Id. "Typicality can be satisfied if the putative representative's claims and legal theories do not actually conflict with other class members, thereby prejudicing their claims." Id.

The Courts in Dehon and Lynch found the typicality requirement satisfied under facts analogous to those presented here. In Dehon, the Court found the class representatives' challenges to subordination of their shareholder interests would be typical of all other shareholders, whose interests the plaintiff was also trying to subordinate. Id. In Lynch, the

court was "satisfied that the defenses of the named Shareholders as Shareholders would be typical of the class of shareholders." 82 F.R.D. at 482.

Here, the defenses of the Class Representatives are typical of the defenses of the putative Defendant Class. The former Securityholders' primary defense is that Mercury has not suffered any "indemnifiable Loss under the terms of the Merger Agreement with respect to any federal or state tax liabilities that were discharged by estimated tax payments made by KOR prior to the closing of the Merger," and, thus, Mercury is not entitled to seek any indemnification under the Merger Agreement with respect to either post-closing tax liabilities or pre-closing state tax liabilities. See First Amended Answer, ¶¶ 1-2, 11-12. These defenses are governed by or derived from the terms of the Merger Agreement, as well as the escrow agreement. All former Securityholders, including the Class Representatives, must assert and prove this defense to prevail. Thus, Mercury has satisfied the typicality requirement. See Dehon, supra; Lynch, supra; Dudley, 57 F.R.D. at 180 (defenses available to representative shareholder were typical of those available to putative class of common shareholders who allegedly were unjustly enriched with preferred stock); Ragsdale, 625 F. Supp. at 1224 (defenses of state's attorney for Cook County, Illinois, were typical of defenses of class of all state's attorneys in Illinois, where attorneys relied on the same defense that statutes and regulations challenged by plaintiff were constitutional).

### 4. Adequacy of Representation (Rule 23(a)(4))

"Adequate representation under Rule 23(a)(4) has two prongs: 1) an assurance of the ability of both the class representative and its counsel to conduct the litigation; and 2) an absence of conflict between the class representative and the putative class members." Dehon, 298 B.R. at 215; Nexium, 2013 U.S. Dist. LEXIS at *23 ("Adequacy also requires that class counsel 'be qualified, experienced and able to vigorously conduct the proposed litigation.'"). In evaluating

13

these factors, courts consider whether the putative class representative "has a substantial claim to defend"; whether any collusion exists between the representative and the plaintiff; and whether the representative "has the resources to conduct the litigation fully." Id.

### a. *The Putative Class Representatives are Members of the Class and Have Substantial Interests to Defend*

In cases involving the certification of defendant classes comprised of shareholders, courts have held that class representatives owning a significant amount of stock as compared to other class members have a substantial interest to defend, and are adequate representatives of the class. For example, in Integra Realty, Inc. v. Fidelity Capital Appreciation Fund, 262 F.3d 1089, 1111-12 (10th Cir. 2001), the Tenth Circuit affirmed certification of a defendant class of shareholders. Regarding the class representative holding the largest share of stock, the Court held that the representative's "interests were aligned with those of the other class members in that all concerned wished to limit their liability to the lowest possible amount"; the representative's "ownership of a large block of shares would have created a greater incentive to bring the per-share costs of settlement down to the lowest possible level" and "to reduce the class liability as much as possible." Id. at 1112 (emphasis added).

Here, the putative Class Representatives held a substantial amount of the KOR vested options, common stock, and preferred stock outstanding at the time of the merger. Like all other former Securityholders, the Class Representatives now share an interest in the Indemnity Escrow Amount. Because any escrow funds remaining after payment of claims will be disbursed to former Securityholders on a pro rata basis, the Class Representatives' interest in defending this case is at least as great as, if not greater than, other members of the putative Defendant Class. See Dehon, 298 B.R. at 216 (putative representative's interest of $76,398.53 was "not an insignificant sum of money and certainly worth defending"); Lynch, 82 F.R.D. at 482 (adequacy

of representation was met, where restitution from defendant class of shareholders would be required if plaintiff prevailed).

### b. There is No Collusion Between the Putative Class Representatives and Mercury

There is no evidence of any collusion between the putative Class Representatives and Mercury. Defendants have not alleged any such collusion in their Answer. Further, at least two of the putative Class Representatives, Kevin Carnino and Thomas O'Hara, participated directly in responding to Mercury's claims for Tax indemnification.

### c. The Putative Class Representatives Have the Resources to Conduct the Litigation

Both the Class Representatives and their attorneys can adequately conduct this litigation. First, the Class Representatives have the services of SRS at their disposal. SRS is contractually obligated to represent the interests of the former Securityholders, including the Class Representatives. SRS is authorized to defend or resolve actions arising out of the Merger Agreement, including actions concerning Mercury's rights of indemnification. The balance of the Escrow Amount, which originally totaled $150,000, is available to SRS and, presumably, the Class Representatives, to pay for attorneys' fees and other costs associated with the defense of this case.

In addition, SRS and the Class Representatives are represented jointly by Foley & Lardner LLP, an international law firm with expertise in litigating business and commercial disputes. The firm website states the firm has "represented corporations in nearly every industry, handling some of the largest and most complex commercial lawsuits and arbitrations for domestic and international clients," including "breach of contract litigation," and "tax, valuation,

and fiduciary litigation."[3] The firm's "tax, valuation, and fiduciary litigation professionals . . . draw upon the experience of attorneys in offices throughout the United States and in Brussels, Shanghai, and Tokyo." The firm also cites its "extensive class action work."

There is no issue regarding the Class Representatives' ability and resources to sustain an adequate defense of Mercury's claims. See Dehon, 298 B.R. at 216 (finding adequacy of representation satisfied, where counsel for the putative class representative was "a highly skilled and well regarded firm in the litigation of bankruptcy matters," and the putative class representative had "at least $50,000 at his disposal . . . with which to conduct his defense of the class"); Dudley, 57 F.R.D. at 180 (finding adequacy of representation satisfied because one representative defendant had counsel who was "both able and experienced").

      **C.**      **Defendants Meet the Requirements of Rule 23(b).**

            **1.**      **Rule 23(b)(1)**

Under Rule 23(b)(1)(A), certification of a mandatory class is authorized "if separate actions run the risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." Dehon, 298 B.R. at 216 (quoting Rule 23(b)(1)(A)). Alternatively, a mandatory class may be maintained under Rule 23(b)(1)(B) if separate actions "would create the risk of adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests." Dehon, 298 B.R. at 216 (quoting Rule 23(b)(1)(B)). Where a case meets the requirements of both provisions, "it is generally most proper to proceed under [Rule] 23(b)(1) exclusively so there will be no inconsistent adjudication or compromise of class interests." Lynch, 82 F.R.D. at 482.

---

[3] http://www.foley.com/generalcommercial/

In this case, Mercury's request for class certification satisfies Rule 23(b)(1)(A) and 23(b)(1)(B). Mercury seeks Tax indemnification from more than 200 former Securityholders, each of whom has an interest in the Indemnity Escrow Amount that will be used, in the first instance, to pay Mercury's claims. As such, each former Securityholder's rights are affected by the resolution of the overriding issue in this case – whether Mercury is entitled to indemnification under the Merger Agreement for claims relating to KOR's prior federal and state Tax liability. Were Mercury required to proceed separately against former Securityholders, the possibility exists that Mercury could obtain differing outcomes, depending on the Court's interpretation of the Merger Agreement. Likewise, were Mercury to prevail against some former Securityholders with respect to its argument concerning the calculation of claims for Tax indemnification under the Merger Agreement, those rulings could impair the interests of other former Securityholders who were not involved in those proceedings. In addition, the cost of litigating against each former Securityholder individually would likely be prohibitive. The only practical approach is to adjudicate Mercury's rights of indemnification once. Thus, the proposed Defendant Class of former Securityholders should be certified as a mandatory class under Rule 23(b)(1)(A) and (B). See Dehon, 298 B.R. at 216-17 (certifying mandatory defendant class of shareholders under Rule 23(b)(1)(A) and (B); reasoning that if some of the over 1,000 stock repurchase claims were allowed and others disallowed based on the same theory of subordination, the plaintiff would be compelled to bring every one of the stock repurchase claims before the Court to obtain a ruling against each class member); Lynch, 82 F.R.D. at 483 (certifying defendant shareholder class under Rule 23(b)(1), because, in part, "any liability imposed upon the representative shareholders, [a]s shareholders, would effectively foreclose the unnamed shareholders from defending their respective interests in another court"); Ragsdale, 625 F. Supp. at 1223 (Rule 23(b)(1)(A) was satisfied, where prosecution of separate actions against

17

individual members of defendant class would create risk of inconsistent or varying adjudications, and plaintiffs would be faced with incompatible standards of conduct); Wyandotte Nation v. City of Kansas City, 214 F.R.D. 656, 664 (D. Kan. 2003) (certifying defendant class of landowners under Rule 23(b)(1)(B) because "[a]ny determination regarding an individual defendant's entitlement to the land would likely entail the determination of issues that could be used offensively to collaterally estop the defenses of other defendants"); In re Chambers Dev. Sec. Litig., 912 F. Supp. 822, 836 (W.D. Pa. 1995) (certifying defendant class of 250 partners of accounting firm under Rule 23(b)(1)(B)).

        **2.**     **Rule 23(b)(3)**

If the Court agrees certification under Rule 23(b)(1) is proper, it need not reach a determination under Rule 23(b)(3).  Lynch, 82 F.R.D. at 483.  Even if a determination is necessary, however, Mercury has satisfied Rule 23(b)(3).

As explained above, the overriding common issue in this case is whether Mercury is entitled to indemnification under the Merger Agreement.  To date, no defenses have been asserted that would apply to some former Securityholders, but not others.  Thus, a class action is superior to other available methods for fairly and efficiently adjudicating Mercury's claims.  See Dudley, 57 F.R.D. at 180 (Rule 23(b)(3) satisfied, where common questions of law or fact pertained to representative shareholder and putative class of common shareholders that allegedly were unjustly enriched with preferred stock); In re Chambers Dev. Sec. Litig., 912 F. Supp. 822, 836 (W.D. Pa. 1995) (certifying defendant class of 250 partners of accounting firm under Rule 23(b)(3)).

### III. CONCLUSION

For the foregoing reasons, Mercury respectfully requests that this Court grant its Motion for Class Certification and grant any other relief deemed just and necessary.

Respectfully submitted,

MERCURY SYSTEMS, INC

By Its Attorneys,

Dated:  January 17, 2014

*s/Christopher H.M. Carter*
Christopher H.M. Carter, Esq. (BBO #561146)
Michael J. Connolly, Esq. (BBO#638611)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
Ph. (617) 345-9000
Fx. (617) 345-9020

### CERTIFICATE OF SERVICE

I certify that, on this 17th day of January, 2014, this document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants.

*s/Christopher H.M. Carter*
Christopher H.M. Carter, Esq.

#52278963