UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 13-11962 -RGS

MERCURY SYSTEMS, INC.

v.

SHAREHOLDER REPRESENTATIVE SERVICES LLC

MEMORANDUM AND ORDER ON CROSS MOTIONS FOR PARTIAL
JUDGMENT ON THE PLEADINGS

August 22, 2014

STEARNS, J.

This case involves a dispute over the interpretation of a tax indemnification clause in an Agreement and Plan of Merger (Merger Agreement or Agreement) through which plaintiff Mercury Systems, Inc. (Mercury) acquired KOR Electronics (KOR). Defendant Shareholder Representative Services LLC (SRS) is the agent and proxy for the KOR Securityholders from whom KOR was acquired. Both parties now move for partial judgment on the pleadings as to Counts I and IV of the First Amended Complaint, which are related to federal and state tax indemnification claims for the 2011 tax year.

BACKGROUND

On December 22, 2011, the Merger Agreement was executed, and KOR became a wholly-owned subsidiary of Mercury, while the

Securityholders of KOR's outstanding shares and vested options exchanged their shares and options for payments from Mercury totaling $70 million.[1] Pursuant to the Agreement, $10.65 million of the $70 million that Mercury paid for KOR was placed into an escrow account established at closing to indemnify Mercury. Merger Agreement §§ 1.01(a), 9.05. The Agreement contained a tax indemnification section wherein SRS agreed to indemnify Mercury for pre-closing tax period liabilities and any related losses.

On January 28, 2013, Mercury filed an indemnity claim for $1,829,112, comprised of $1,473,294 claimed as 2011 federal tax liabilities, and $355,818 claimed as 2011 state tax liabilities. SRS maintains that it does not owe this amount because almost all of it has already been paid to Mercury through tax credits and refunds attributable to KOR's pre-closing tax payments and credits that were in excess of the eventual amounts owed for tax year 2011.[2]

### ***The Merger Agreement***

---

[1] The Merger Agreement was executed by Mercury Systems, Inc.; King Merger, Inc. (a Mercury subsidiary); KOR; and SRS.

[2] SRS has represented that it is willing to pay the difference between the 2011 tax refunds Mercury received and the amount Mercury currently seeks, and that SRS is prepared, in the interests of resolving this dispute, to release this amount ($68,499) to Mercury upon authorization of the court. *See* Def.'s Mem. at 4.

Both parties agree that relevant language covering the disputed claims is found in Article X of the Merger Agreement, entitled "Tax Matters," which begins on page 70 of the Agreement.³ Section 10.01, <u>Tax Indemnification</u>, requires the Securityholders (who are represented by SRS) to:

> indemnify and hold harmless each Buyer Indemnified Person from, against and in respect of any and all Losses that constitute or that result from, arise out of or relate to, directly or indirectly (a) Taxes (or the non-payment thereof) of the Company and its Subsidiaries for all Pre-Closing Tax Periods, . . . (c) any and all Taxes incurred by the Company directly related to the distribution of proceeds for the Contemplated Transactions . . . .

Merger Agreement § 10.01. The section concludes with the statement that,

> [a]ny indemnification made pursuant to this <u>Section 10.01</u> shall be made in accordance with the provisions of <u>Section 9.05</u>. Notwithstanding any other provision of this Agreement, the determination of the Taxes with respect to this <u>Section 10.01</u> will be calculated without taking into account any deductions described in <u>Section 10.05</u> below.

*Id.*

Section 10.05, <u>Allocation of Certain Expenses</u>, dictates that "Company Transaction Expenses . . . shall be claimed as deductions for the Pre-Closing Tax Period ending on the Closing Date" and that "any income tax

---

³ In the Agreement, Mercury is called the "Parent," and KOR is the "Company." "Pre-Closing Tax Period" is defined as "taxable periods ending on or before the Closing Date and the portion through the end of the Closing Date for any Taxable period that includes (but does not end on) the Closing Date." Merger Agreement § 1.01.

3

deductions attributable to payments due at Closing to holders of Vested Options shall be claimed as deductions for the Pre-Closing Tax Period ending on the Closing Date." *Id.* § 10.05.

Section 10.02, Tax Return Preparation, requires that a distribution be made to Mercury from the escrow account three days prior to the filing of tax returns relating to any pre-closing tax period and explains the calculation for this distribution as follows:

> With respect to any such Tax Return filed after the Closing Date that relates to any Pre-Closing Tax Period and upon the request of the Securityholders' Representative, the Escrow Agent shall make a distribution from the Escrow Amount (sic) to the Parent three (3) days prior to the filing of such Tax Returns the amount of the aggregate Tax liabilities due, if any, with respect to such Pre-Closing Tax Periods; provided however, that for purposes of determining the Tax liability due with respect to such Tax Return **for purposes of calculating the Securityholders' indemnification obligations, the determination of the Tax liability for any such Pre-Closing Tax Period will be calculated and determined excluding any deductions described in Section 10.05 below**. The amounts actually due on the Tax Return (after giving effect to any deductions described in Section 10.05 below) shall promptly be paid by Parent to the appropriate Governmental Authority.

*Id.* § 10.02 (bolded emphasis added).

### *2011 Tax Claims*

On its 2011 federal tax return, KOR reported federal taxable income as a negative $380,441. Because of estimated tax payments for 2011 that

4

KOR made prior to the closing, and because of an overpayment carried over from the previous year, KOR ultimately overpaid its 2011 federal tax liability by $1,423,294. KOR also made estimated state tax payments prior to the closing totaling $407,515, resulting in a state tax overpayment of $337,319 for 2011. In sum, it is undisputed that KOR (before it was acquired by Mercury), overpaid both its federal and state 2011 tax liabilities in the aggregate amount of $1,760,613.[4]

DISCCUSSION

The interpretation of the Merger Agreement and the rights of the parties under it are governed by Massachusetts law, in accordance with Section 12.08 of the Agreement. In Massachusetts, contract interpretation questions "are ordinarily questions of law for a court," as "contract law, unlike tort law, [] favors judicial resolution of disputes." *Nadherny v. Roseland Prop. Co., Inc.*, 390 F.3d 44, 48 (1st Cir. 2004).

Unambiguous terms in a contract "must be construed in their usual and ordinary sense," *Ober v. Nat'l Cas. Co.,* 318 Mass. 27, 29 (1945), and a term is not rendered ambiguous "merely because an imaginative reader devises a way to split hairs." *Lexington Ins. Co. v. Gen. Accident Ins. Co. of*

---

[4] As previously noted, the difference between these overpayments and the amount Mercury seeks pursuant to its alleged "pro-forma" calculation is $68,499.

*Am.*, 338 F.3d 42, 47 (1st Cir. 2003). "[S]ubjective and unexpressed expectations cannot refute an agreement which emerges from the objective facts; contracts rest on objectively expressed manifestations of intent." *Beatty v. NP Corp.*, 31 Mass. App. Ct. 606, 612 (1991). Nevertheless, when a court is construing a commercial contract, "[c]ommon sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." *Fishman v. LaSalle Nat'l Bank*, 247 F.3d 300, 302 (1st Cir. 2001); *see also id.* ("The presumption in commercial contracts is that the parties were trying to accomplish something rational.").

Mercury asserts that it is entitled to the sum of $1,829,112 in accordance with its "pro forma" calculation of KOR's 2011 federal and state tax liability, as detailed in Sections 10.01 and 10.02 of the Merger Agreement. Mercury maintains that this "calculation" must be made without reference to any actual tax liability Mercury incurred for KOR's 2011 tax debts. This is a plausible reading of the Agreement because certain deductions that were taken on KOR's 2011 tax returns are explicitly excluded from the tax indemnity calculation.[5] SRS has conditionally

---

[5] *See* Merger Agreement § 10.01 ("[T]he determination of the Taxes with respect to this Section 10.01 will be calculated without taking into account any deductions described in Section 10.05 below."); *id.* § 10.02 ("[F]or purposes of determining the Tax liability due with respect to such Tax Return for purposes of calculating the Securityholders' indemnification

6

assented to this plain reading and is willing to pay Mercury the difference between the refund it received from KOR's overpayments and the amount of KOR's theoretical tax liability.

Where Mercury goes beyond the plain meaning of the contract is in its assertion that this "pro forma" calculation is to be applied without reference to the tax overpayments and credits that KOR had already paid toward the indemnified tax liabilities (which amounts Mercury indisputably received post-merger). Mercury argues that the exclusion of the referenced deductions from the tax indemnification calculation in Sections 10.01 and 10.02 is a specific "bargained-for benefit," which is independent of Mercury's entitlement to any refunds or credits that KOR was to receive (that would inure to Mercury as KOR's new owner). Thus Mercury's position is that this "benefit" must be calculated without being offset by amounts Mercury actually received as refunds from the Internal Revenue Service for the 2011 tax year.

The best that can be said is that this construction seems to be no more than a recently contrived theory intended to recoup what SRS accurately terms "double recovery." Mercury admits that it has already

---

obligations, the determination of the Tax liability for any such Pre-Closing Tax Period will be calculated and determined excluding any deductions described in Section 10.05 below.").

received the economic benefit it bargained for – which is the "benefit of the 10.05 deductions." While Mercury claims the "benefit" of the tax refunds resulting from 10.05 deductions is distinct from what it terms the "economic benefit of the 10.05 deductions," these two are, in financial reality, overlapping, and there is no language in the Agreement suggesting that this practical reality was intended to be altered by the parties; a condition specifying that the calculation of tax indemnification would be performed without reference to certain deductions cannot be read to also mean that the tax indemnification calculation should be performed without reference to amounts already paid toward taxes, unless it is so specified in the contract.

Aside from the fact that such double recovery is not supported by the plain language of the contract, the fact that this provision was placed in a section entitled "Tax Indemnification" is only further indication that the provision was intended to reimburse Mercury for any gap between the taxes already paid by KOR for the 2011 tax year before the closing and tax owed ultimately owed by KOR for 2011 (without having to calculate this in advance of the closing thereby reducing the purchase price to the SRS Securityholders). *See Black's Law Dictionary* 886 (10t ed. 2009) (defining "indemnification" as "[t]he action of compensating for loss or damage

sustained"); s*ee also id.* at 887 (defining "indemnity clause" as "[a] contractual provision in which one party agrees to answer for any specified or unspecified liability or harm that the other party might incur").

Mercury's last-gasp argument is that, because it was already entitled to receive the tax overpayments (Mercury submits a balance sheet exchanged between the parties during negotiations that reflects the overpayments as an asset), the tax indemnification section must be deemed at least ambiguous with regard to whether it should be offset by these amounts. But nothing in the actual contract suggests such an ambiguity. The idea that the tax indemnification provision was intended to provide some wholly separate "economic benefit" of the merger-related deductions distinct from a tax refund entitlement that appeared on a particular balance sheet exchanged between the parties is found nowhere in the plain language of the agreement.

## ORDER

For the foregoing reasons, defendant's motion for partial judgment on the pleadings is <u>ALLOWED</u>, and plaintiff's motion for partial judgment on the pleadings is <u>DENIED</u>. The court orders SRS to make a payment of $68,499, representing the difference between the calculation of 2011 tax liability without reference to the specified deductions, and the amounts

9

Mercury has received by virtue of KOR's pre-closing 2011 tax overpayments and credits.

                        SO ORDERED.

                        <u>/s/ Richard G. Stearns</u>
                        UNITED STATES DISTRICT JUDGE